# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **DAVID KOK**, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>**MUELLER WATER PRODUCTS, INC.**,<br><br>      Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, David Kok ("Plaintiff" or "Kok"), individually and on behalf of all others similarly situated, complains and alleges as follows against Defendant, Mueller Water Products, Inc. ("Defendant" or "Mueller") based on personal knowledge, on the investigation of his counsel, and on information and belief as to all other matters:

## INTRODUCTION

1. This is a civil action seeking monetary damages and injunctive and declaratory relief from Defendant Mueller, arising from its failure to safeguard certain Personally Identifying Information ("PII") of thousands of its current and former employees, resulting in Defendant's network systems being unauthorizedly accessed on or around October 25, 2023, and the PII of employees therein, including

of Plaintiff and the proposed Class Members, being disclosed, stolen, compromised, and misused, causing widespread and continuing injury and damages.

2.      According to Defendant's Breach Notice, on or around October 25, 2023, "Mueller became aware of unusual activity" on its IT network. An internal investigation revealed that "certain files stored within Mueller's environment were copied from the system by an unauthorized person(s) between October 25, and 26, 2023." A copy of the Breach Notice is attached as Exhibit A.

3.      As explained below, Plaintiff and Members of the Class have suffered significant injury and damages due to the Data Breach permitted to occur by Mueller, and the resulting misuse of their PII, monetary damages including out-of-pocket expenses, including those associated with the reasonable mitigation measures they were forced to employ, and other damages. Plaintiff and the Class also now forever face an amplified risk of *further* misuse, fraud, and identity theft due to their sensitive PII falling into the hands of cybercriminals as a result of the tortious conduct of Defendant.

4.      On behalf of himself and the Class preliminarily defined below, Plaintiff brings causes of action for negligence, negligence *per se*, breach of implied contract, unjust enrichment, breach of fiduciary duty, Violation of O.C.G.A. § 13-6-11, and bailment. Plaintiff seeks damages and injunctive and declaratory relief arising from Mueller's failure to adequately protect his highly sensitive PII.

## PARTIES

5.      Plaintiff Kok is a natural person and citizen of the state of Indiana, residing in Fort Wayne, Indiana, where he intends to remain. Plaintiff is a former employee of Mueller.

6.      Defendant, Mueller Water Products, Inc. is a foreign profit corporation organized and existing under the laws of the state of Delaware, with a principal place of business located 1200 Abernathy Road, NE, Suite 1200, Atlanta, Georgia, 30328 and may be served through its registered agent, C T Corporation System, 289 S. Culver St., Lawrenceville, GA 30046.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because: (i) there are more than one hundred (100) Class Members; (ii) the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs; and (iii) Plaintiff and Defendant are citizens of different states.

8.      This Court has personal jurisdiction over Defendant because Defendant operates, conducts, engages in, or carries on a business in this State; it maintains its principal place of business and headquarters in Georgia; and committed tortious acts in Georgia.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because

a substantial part of the events or omissions giving rise to these claims occurred in this district, and/or or a substantial part of property that is the subject of this action is situated herein.

## FACTUAL ALLEGATIONS

### *Mueller Water Products*

10.     Mueller is "a leading manufacturer and marketer of products and services used in the transmission, distribution and measurement of water in North America." Its products and services include "engineered valves, fire hydrants, pipe connection and repair products, metering products, leak detection, pipe condition assessment, pressure management products, and software technology that provides critical water system data."[1] Mueller's total annual revenue is $1.2 billion.[2]

11.     On information and belief, Mueller failed to undertake adequate measures to safeguard the PII of Plaintiff and the proposed Class Members, including failing to implement industry standards for data security, and failing to properly train employees on cybersecurity protocols, resulting in the Data Breach.

12.     As a direct and proximate result of Defendant's failures to protect Plaintiff's and the Class Members' sensitive personal information and warn them

---

[1]https://ir.muellerwaterproducts.com/press-releases/2023/10-28-2023-220146075 (last accessed August 28, 2024).

[2] https://www.zoominfo.com/c/mueller-water-products-inc/94455911 (last accessed August 28, 2024).

promptly and fully about the Data Breach, Plaintiff and the proposed Class have suffered widespread injury and damages necessitating Plaintiff seeking relief on a class wide basis.

***Plaintiff and the Class Members entrusted their PII to Mueller***

13.     Plaintiff and the Class are current and former employees of Mueller.

14.     As a condition of employment with Mueller, Plaintiff and the Class Members were required by Mueller to confide and make available to it their sensitive and confidential PII, including, but not limited to, their names and Social Security Numbers.

15.     Mueller maintains records of its employees' information such as their full names and Social Security numbers in the ordinary course of business. These records are stored on Mueller's network systems.

16.     In its Privacy Policy, Mueller states that it "respect[s] your privacy and [is] committed to protecting it through our compliance with this Privacy Policy." Further, Mueller promises that it has "implemented measures designed to secure your personal information from accidental loss and from unauthorized access, use, alteration, and disclosure."[3]

17.     Mueller represented to its employees that their PII would be secure.

---

[3] https://www.muellerwaterproducts.com/privacy (last accessed August 28, 2024).

18.    The Data Breach that is the subject of this civil action is not contemplated or permitted by Mueller's Privacy Policy.

19.    Mueller acquired, collected, and stored a massive amount of said PII of its employees, including Plaintiff and the Members of the proposed Class, which it stored in its electronic systems.

20.    By obtaining, collecting, using, and deriving a benefit from its employees' PII, Mueller assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting their PII from unauthorized disclosure.

21.    Plaintiff has taken reasonable steps to maintain the confidentiality of his PII. Plaintiff, as a former employee, relied on Mueller to keep his PII confidential and securely maintained, to use this information for authorized purposes and disclosures only.

22.    In its Privacy Policy, Mueller promises that it will not sell PII to third parties for business or commercial purposes, and that it will disclose PII as described in the policy or in any other applicable privacy notices or opt-ins that website visitors may receive; that Mueller will disclose PII to third parties only with consent; to business partners or agents; for business transfers or assignments; and as required by law.[4]

---

[4] *See id.*

23.     Plaintiff and the proposed Class Members entrusted their PII to Mueller solely for the purposes of applying for employment with Defendant and/or as a condition of employment, with the expectation and implied mutual understanding that Mueller would strictly maintain the confidentiality of the information and undertake adequate measures to safeguard it from theft or misuse.

24.     Plaintiff and the proposed Class Members would not have entrusted Mueller with their highly sensitive PII if they had known that Mueller would fail to take adequate measures to protect it from unauthorized use or disclosure.

***Plaintiff's and the Class Members' PII was Unauthorizedly Disclosed and Compromised in the Data Breach***

25.     As a prerequisite to employment, Plaintiff and the Class Members disclosed their non-public and sensitive PII to Mueller, with the implicit understanding that their PII would be kept confidential. This understanding was based on all the facts and circumstances attendant to their employment there, and the express, specific, written representations made by Mueller and its agents.

26.     Plaintiff and the Class Members reasonably relied upon Mueller's representations to their detriment and would not have provided their sensitive PII to Mueller if not for Mueller's explicit and implicit promises to adequately safeguard that information.

27.     On information and belief, Mueller "became aware of unusual activity" on its IT network. An internal investigation revealed that cybercriminals had

accessed its systems between October 25 and 26, 2023, giving cybercriminals unfettered access to its system for an entire two days. Ex. A.

28.     Worryingly, Defendant admitted that the unauthorized actor had not only accessed its system, but also *copied* certain files from the system. Ex. A.

29.     Despite this, Defendant waited until August 16, 2024—almost *ten months* after the Data Breach was discovered—to begin notifying victims that their PII had been compromised and stolen during the Data Breach. *See* Exhibit A.

30.     Defendant represented in its Breach Notice that it had "taken steps to review our existing policies and procedures and enhanced the security of our systems." Ex. A. However, this is too little too late because these steps should have been taken *before* the Data Breach.

31.     Mueller's Breach Noticed acknowledged the increased risk faced by victims of the Data Breach when it urged those affected to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for unusual activity and to detect errors." Ex. A. Further, Mueller encouraged Plaintiff and the class to "promptly" report "[a]ny suspicious activity." Ex. A. The Breach Notice also encouraged victims to enroll in credit monitoring and take additional steps outlined in the attachments to the Notice. Ex. A.

32.     Although Mueller offered several months of complimentary credit

monitoring, this is insufficient to address the lifelong risk that victims now face due to the Data Breach.

33.    As a result of this Data Breach, the PII of Plaintiff and the proposed Class Members was unauthorizedly disclosed and compromised in the Data Breach.

34.    The Data Breach was preventable and a direct result of Mueller's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect employees' PII.

***LockBit claims credit—and threatens to publish PII***

35.    Worryingly, the cybercriminals that obtained Plaintiff's and Class members' PII/PHI appear to be the notorious Russian cybercriminal group "LockBit."[5]

36.    On November 12, 2023, LockBit claimed credit for the Data Breach on its Dark Web website.[6]

37.    Thereafter, LockBit indicated that it would *publish* the stolen PII/PHI on November 26, 2023, unless a ransom was paid.[7]

---

[5] *See e.g.,* @Comparitech, Twitter (X) (February 12, 2024, 9:15 AM), *https://x.com/Comparitech/status/1757060890136891490*.

[6] *https://www.ransomlook.io/screenshots/lockbit3/muellersystemscom.png* (last accessed August 28, 2024).

[7] *See id.*



38.   Thus, it appears Plaintiff's and Class members' PII was *already published* on the Dark Web—given that the November 2023 deadline has long since passed.

39.   Arising in Russia during early 2020, "LockBit" is now "the most

deployed ransomware variant across the world and continues to be prolific in 2023."[8]

40.    Thus, the Cybersecurity and Infrastructure Security Agency (CISA), Federal Bureau of Investigation (FBI), the Multi-State Information Sharing and Analysis Center (MS-ISAC) have warned that:

    a.    "LockBit affiliates have employed double extortion by first encrypting victim data and then exfiltrating that data while threatening to post that stolen data on leak sites."[9]

    b.    "Up to the Q1 2023, a total of 1,653 alleged victims were observed [i.e., published] on LockBit leak sites."[10]

41.    And Reuters reports that:

    a.    "On the dark web, Lockbit's blog displays an ever-growing gallery of victim organisations that is updated nearly daily."[11]

    b.    "Next to their names are digital clocks showing the number of days left to the deadline given to each organisation to provide ransom payment, failing which, the gang publishes the sensitive data it has

---

[8] *Cybersecurity Advisory*, CYBERSECURITY & INFRASTRUCTURE SECURITY AGENCY (June 14, 2023) https://www.cisa.gov/news-events/cybersecurity-advisories/aa23-165a.

[9] *Id*.

[10] *Id*.

[11] Zeba Siddiqui & James Pearson, *Explainer: What is Lockbit? The digital extortion gang on a cybercrime spree*, REUTERS (Nov. 10, 2023) https://www.reuters.com/technology/cybersecurity/what-is-lockbit-digital-extortion-gang-cybercrime-spree-2023-11-10/.

collected."[12]

42.    And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[13]

43.    Thus, on information and belief, Plaintiff's and the Class's stolen PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

***Plaintiff's Experiences and Injuries***

44.    Plaintiff David Kok is a former employee of Defendant.

45.    As a condition of employment, Defendant required Plaintiff to provide it with his PII. Defendant thus obtained and maintained Plaintiff's PII.

46.    Plaintiff provided his PII to Defendant and trusted that the company would use reasonable measures to protect it according to Mueller's internal policies as well as state and federal law.

47.    As a result, Plaintiff was injured by Defendant's Data Breach.

48.    Plaintiff does not recall ever learning that his information was

---

[12] *Id.*

[13] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

compromised in a data breach incident—other than the breach at issue here.

49.    Plaintiff received a Notice of Data Breach in August 2024. *See* Exhibit B.

50.    Through its Data Breach, Defendant compromised Plaintiff's:

    a.    Name; and

    b.    Social Security number.

51.    On information and belief, Plaintiff's PII was obtained by cybercriminals and has been, or will be, published on the dark web.

52.    Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft. After all, Defendant directed Plaintiff to take those steps in its breach notice. *See* Ex. A.

53.    Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

54.    Indeed, following the Data Breach, Plaintiff has experienced a dramatic increase in spam and scam emails and calls.

55.    Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

56.     Plaintiff suffered actual injury from the exposure and theft of his PII—which violates his rights to privacy.

57.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

58.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII right in the hands of criminals.

59.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

60.     Today, Plaintiff has a continuing interest in ensuring that his PII—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

61.     Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

    a.     loss of the opportunity to control how their PII is used;

    b.     diminution in value of their PII;

- 14 -

c.      compromise and continuing publication of their PII;

d.      out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e.      lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f.      delay in receipt of tax refund monies;

g.      unauthorized use of their stolen PII; and

h.      continued risk to their PII—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII.

62.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

63.    The value of Plaintiff and Class's PII on the black market is considerable. Stolen PII trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "dark web"— further exposing the information.

64.     It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

65.     One way that criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—first the stolen PII, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

66.     The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

67.     In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

68.     Defendant disclosed the PII of Plaintiff and Class members for

criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

69.     Defendant's failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

### *Defendant Knew—Or Should Have Known—of the Risk of a Data Breach*

70.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

71.     According to the *2023 Annual Data Breach Report*, the number of data compromises in 2023 nearly doubled compared to 2022.[14] And in 2023, a record 3,205 breaches occurred, exposing the data of approximately 353,027,892 victims.[15]

72.     Indeed, cyberattacks have become so notorious that the Federal

---

[14] https://www.idtheftcenter.org/post/2023-annual-data-breach-report-reveals-record-number-of-compromises-72-percent-increase-over-previous-high/ (last visited August 18, 2024).
[15] *Id.*

Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[16]

73.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**Defendant Failed to Follow FTC Guidelines**

74.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

75.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[17]  The FTC declared that, *inter*

---

[16] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[17] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

*alia*, businesses must:

    a.    protect the personal customer information that they keep;

    b.    properly dispose of personal information that is no longer needed;

    c.    encrypt information stored on computer networks;

    d.    understand their network's vulnerabilities; and

    e.    implement policies to correct security problems.

76.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

77.    Furthermore, the FTC explains that companies must:

    a.    not maintain information longer than is needed to authorize a transaction;

    b.    limit access to sensitive data;

    c.    require complex passwords to be used on networks;

    d.    use industry-tested methods for security;

    e.    monitor for suspicious activity on the network; and

    f.    verify that third-party service providers use reasonable

security measures.

78.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

79.    In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### *Defendant Failed to Follow Industry Standards*

80.    Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti- malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

81.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting

web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

82.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

83.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. Proc. 23. The Class is preliminarily defined as:

> All individuals residing in the United States whose PII was compromised as a result of the Data Breach that was discovered by Mueller in October 2023.

85.     Excluded from the Class are Mueller and its subsidiaries and affiliates,

officers, directors, and members of their immediate families, and any entity in which it has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

86.   Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es) if necessary, before this Court determines whether certification is appropriate.

87.   *Fed. R. Civ. Proc. 23(a)(1) Numerosity:* The Class is so numerous such that joinder of all Members is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of current and former employees of Mueller, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Mueller's records. Mueller has the administrative capability through its computer systems and other records to identify all Members of the Class, and such specific information is not otherwise available to Plaintiff.

88.   *Fed. R. Civ. Proc. 23(a)(2) Commonality and Fed. R. Civ. Proc. 23(b)(3) Predominance:* There are numerous questions of law and fact common to the Class. As such, there is a well-defined community of interest among the Members of the Class. These questions predominate over questions that may affect only individual Members of the Class because Mueller has acted on grounds

generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

a.   Whether Mueller had a duty to protect employee PII;

b.   Whether Mueller knew or should have known of the susceptibility of its systems to a data breach;

c.   Whether Mueller's security measures to protect its systems were reasonable considering best practices recommended by data security experts;

d.   Whether Mueller was negligent in failing to implement reasonable and adequate security procedures and practices;

e.   Whether Mueller's failure to implement adequate data security measures allowed the Data Breach to occur;

f.   Whether Mueller's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach, resulting in the unlawful exposure of the Plaintiff's and Class Members' PII;

g.   Whether Plaintiff and Class Members were injured and suffered damages or other losses because of Mueller's failure to reasonably protect its systems and data network;

h.   Whether Plaintiff and Class Members are entitled to relief;

i.   Whether Mueller failed to adequately notify Class Members of

the compromise of their PII;

j.      Whether Mueller assumed a fiduciary duty and/or confidential relationship to Class Members when they entrusted it with their PII;

k.      Whether Mueller breached its contracts with Class Members by failing to properly safeguard their PII and by failing to notify them of the Data Breach;

l.      Whether Mueller's violation of FTC regulations constitutes evidence of negligence or negligence *per se*;

m.      Whether Mueller impliedly warranted to Class Members that the information technology systems were fit for the purpose intended, namely the safe and secure processing of PII, and whether such warranty was breached.

89.     *Fed. R. Civ. Proc. 23(a)(3) Typicality:* Plaintiff's claims are typical of the claims of all Class Members, because all such claims arise from the same set of facts regarding Mueller's failures:

a.      to protect Plaintiff's and Class Members' PII;

b.      to discover and remediate the security breach of its computer systems more quickly; and

c.      to disclose to Plaintiff and Class Members in a complete and

timely manner information concerning the security breach and the theft of their PII.

90.    *Fed. R. Civ. Proc. 23(a)(4) Adequacy:* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a more than adequate representative of the Class in that Plaintiff is a victim of the Data Breach, has suffered injury and damages such as misuse and fraudulent activity as a result of the Data Breach, and brings the same claims on behalf of himself and the putative Class. Plaintiff has no interests antagonistic to that of the Class Members. Plaintiff has retained counsel who are competent and experienced in litigating class actions, including class actions following data breaches and unauthorized data disclosures. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

91.    *Fed. R. Civ. Proc. 23(b)(2) Injunctive and Declaratory Relief:* Mueller has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

92.    *Fed. R. Civ. Proc. 23(b)(3) Superiority:* It is impracticable to bring Class Members' individual claims before the Court. Class treatment permits many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence,

effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

93.     A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

      a.     The unnamed Members of the Class are unlikely to have an interest in individually controlling the prosecution of separate actions;

      b.     Concentrating the litigation of the claims in one forum is desirable;

      c.     Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

      d.     Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

94.     Plaintiff knows of no unique difficulty to be encountered in the prosecution of this action that would preclude its maintenance as a class action.

95.     *Fed. R. Civ. Proc. 23(c)(4) Issue Certification:* Likewise, particular

issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

    a.    Whether Mueller owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing and safeguarding their PII;

    b.    Whether Mueller's security measures to protect its data systems were reasonable considering best practices recommended by data security experts;

    c.    Whether Mueller's failure to institute adequate protective security measures amounted to negligence;

    d.    Whether Mueller failed to take commercially reasonable steps to safeguard prospective employee and employee PII; and

    e.    Whether adherence to FTC data security recommendations, and industry standards on data security would have reasonably prevented the Data Breach.

96.    Finally, all Members of the proposed Class are readily ascertainable. Mueller has access to employee and applicant names and addresses affected by the Data Breach. Using this information, Class Members can be identified and

ascertained for the purpose of providing constitutionally sufficient notice.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

97.     Plaintiff incorporates by reference Paragraphs 1 through 96 as if fully set forth herein.

98.     Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

99.     Defendant owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

100.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

101.    Defendant owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class members' PII.

102.   Defendant owed—to Plaintiff and Class members—at least the following duties to:

   a.   exercise reasonable care in handling and using the PII in its care and custody;

   b.   implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

   c.   promptly detect attempts at unauthorized access;

   d.   notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII.

103.   Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

104.   Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

105.   Defendant knew or reasonably should have known that the failure to

exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

106.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining employment from Defendant.

107.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant held vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII—whether by malware or otherwise.

108.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

109.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

110.    Defendant breached these duties as evidenced by the Data Breach.

111.    Defendant acted with wanton and reckless disregard for the security and

confidentiality of Plaintiff's and Class members' PII by:

       a.   disclosing and providing access to this information to third parties and

       b.   failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

112.   Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

113.   Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

114.   Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

115.   As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer

damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

116.   Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

<u>SECOND CAUSE OF ACTION</u>
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

117.   Plaintiff incorporates by reference Paragraphs 1 through 96 as if fully set forth herein.

118.   Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

119.   Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to

protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class members' sensitive PII.

120.   Defendant breached its respective duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

121.   Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

122.   The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

123.   But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class members would not have been injured.

124.   The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

125.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

126.   Plaintiff incorporates by reference Paragraphs 1 through 96 as if fully set forth herein.

127.   Plaintiff and Class members were required to provide their PII to Defendant as a condition of receiving employment from Defendant. Plaintiff and Class members provided their PII to Defendant in exchange for Defendant's employment.

128.   Plaintiff and Class members reasonably understood that a portion of the funds generated by their employment would be used to pay for adequate cybersecurity measures.

129.   Plaintiff and Class members reasonably understood that Defendant

would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

130.   Plaintiff and the Class members accepted Defendant's offers by disclosing their PII to Defendant in exchange for employment.

131.   In turn, and through internal policies, Defendant agreed to protect and not disclose the PII to unauthorized persons.

132.   In its Privacy Policy, Defendant represented that it had a legal duty to protect Plaintiff's and Class Member's PII.

133.   Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

134.   After all, Plaintiff and Class members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

135.   Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

136.   The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving

the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

137. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

138. Defendant materially breached the contracts it entered with Plaintiff and Class members by:

  a. failing to safeguard their information;

  b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

  c. failing to comply with industry standards;

  d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

  e. failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

139. In these and other ways, Defendant violated its duty of good faith and fair dealing.

140. Defendant's material breaches were the direct and proximate cause of

Plaintiff's and Class members' injuries (as detailed *supra*).

141.   Plaintiff and Class members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

## FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

142.   Plaintiff incorporates by reference Paragraphs 1 through 96 as if fully set forth herein.

143.   Given the relationship between Defendant and Plaintiff and Class members, where Defendant became guardian of Plaintiff's and Class members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

144.   Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII.

145.   Because of the highly sensitive nature of the PII, Plaintiff and Class members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known the reality of Defendant's inadequate data security

practices.

146.    Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII.

147.    Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

148.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## FIFTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

149.    Plaintiff incorporates by reference Paragraphs 1 through 96 as if fully set forth herein.

150.    This claim is pleaded in the alternative to the breach of implied contract claim.

151.    Plaintiff and Class members conferred a benefit upon Defendant. After all, Defendant benefitted from using their PII to provide employment and facilitate its business operations.

152.    Defendant appreciated or had knowledge of the benefits it received

from Plaintiff and Class members. And Defendant benefited from receiving Plaintiff's and Class members' PII, as this was used to provide employment and facilitate its business operations.

153.   Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

154.   Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII.

155.   Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

156.   Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' employment because Defendant failed to adequately protect their PII.

157. Plaintiff and Class members have no adequate remedy at law.

158.   Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

**SIXTH CAUSE OF ACTION**
**Violation of O.C.G.A. § 13-6-11**
**(On Behalf of Plaintiff and the Class)**

159.   Plaintiff incorporates by reference Paragraphs 1 through 96 as if fully set forth herein.

160.   Defendant through its actions alleged and described herein acted in bad faith, was stubbornly litigious, or caused Plaintiff and the Class unnecessary trouble and expense with respect to the events underlying this litigation.

161.   Section 5 of the FTC Act prohibits "unfair…practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendant for failing to implement and use reasonable measures to protect PII.

162.   Defendant violated Section 5 of the FTC ACT by failing to use reasonable measures to protect PII and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII that it obtained and stored and the foreseeable consequences of a data breach.

163.   Defendant also has a duty under the Georgia Constitution ("the Constitution") which contains a Right to Privacy Clause, Chapter 1, Article 1, to

protect its users' private information. The Georgia Constitution states, "no person shall be deprived of life, liberty, or property except by due process of law." Moreover, the Georgia Constitution identifies certain invasions of privacy, including the Public Disclosure of Private Life which prohibits the public disclosure of private facts.

164.   This duty has been recognized by the Georgia Supreme Court in the Restatement of the Law of Torts (Second) §652A which specifically recognized four common law invasion of privacy claims in Georgia, which include 1) appropriation of likeness; 2) intrusion on solitude or seclusion; 3) public disclosure of private facts; and 4) false light.

165.   Defendant's implementation of inadequate data security measures, its failure to resolve vulnerabilities and deficiencies, and its abdication of its responsibility to reasonably protect data it required Plaintiff and the Class to provide and store on its own servers constitutes a violation of the Georgia Constitution and the Restatement of the Law of Torts (Second).

166.   Defendant knew or should have known that it had a responsibility to protect the PII it required Plaintiff and the Class to provide and stored, that it was entrusted with this PII, and that it was the only entity capable of adequately protecting the PII.

167.   Despite that knowledge, Defendant abdicated its duty to protect the PII

it required Plaintiff and the Class to provide and that it stored.

168.    As a direct and proximate result of Defendant's actions, Plaintiff's and the Class Members' PII was stolen. As further alleged above, the Data Breach was a direct consequence of Defendant's abrogation of data security responsibility and its decision to employ knowingly deficient data security measures that knowingly left the PII unsecured. Had Defendant adopted reasonable data security measures, it could have prevented the Data Breach.

169.    As further described above, Plaintiff and the Class have been injured and suffered losses directly attributable to the Data Breach.

170.    Plaintiff and the Class therefore request that their claim for recovery of expenses of litigation and attorneys' fees be submitted to the jury, and that the Court enter a judgment awarding their expenses of litigation and attorneys' fees pursuant to O.C.G.A. § 13-6-11.

### SEVENTH CAUSE OF ACTION
### BAILMENT
### (On Behalf of Plaintiff and the Class)

171.    Plaintiff incorporates by reference Paragraphs 1 through 96 as if fully set forth herein.

172.    Plaintiff, the Class Members, and Defendant contemplated a mutual benefit bailment when the Plaintiff and putative members of the Class transmitted their PII to Defendant solely for the purpose of obtaining employment.

173.   Plaintiff and the Class entrusted their PII to Defendant for a specific purpose—to obtain employment—with an implied contract that the trust was to be faithfully executed, and the PII was to be accounted for when the special purpose was accomplished.

174.   Defendant accepted the Plaintiff's and the Class's PII for the specific purpose of providing employment.

175.   Defendant was duty bound under the law to exercise ordinary care and diligence in safeguarding Plaintiff's and the Class's PII.

176.   Plaintiff and the Class's PII was used for a different purpose than the Plaintiff and the Class intended, for a longer time period and/or in a different manner or place than Plaintiff and the Class intended.

177.   As set forth in the preceding paragraphs, Plaintiff and the Class Members were damaged thereby.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, the Class as heretofore identified, respectfully prays this Honorable Court for judgment as follows:

A.   Certification for this matter to proceed as a class action on behalf of the proposed Class under Fed. R. Civ. Proc. 23;

B.   Designation of Plaintiff as Class Representatives and designation of

the undersigned as Class Counsel;

C.      Actual damages in an amount according to proof;

D.      Injunctive or declaratory relief;

E.      Pre- and post-judgment interest at the maximum rate permitted by applicable law;

F.      Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

G.      For attorneys' fees under the common fund doctrine and all other applicable law; and

H.      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class, hereby demand a trial by jury pursuant to Fed. R. Civ. Proc. 38(b) on all claims so triable.

Dated: August 30, 2024          Respectfully submitted,

                            */s/ Joseph B. Alonso*
                            Joseph B. Alonso
                            Georgia Bar No. 013627
                            Daniel H. Wirth
                            Georgia Bar No: 873443
                            **ALONSO & WIRTH**
                            1708 Peachtree Street, NW
                            Suite 303

Atlanta, GA 30309
Tel: (678) 928-4472
jalonso@alonsowirth.com
dwirth@alonsowirth.com

Raina C, Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Ave., Suite 1601
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
*raina@straussborrelli.com*

*pro hac vice* forthcoming

*Attorneys for Plaintiff and Proposed Class*